### DUNWODY v. THE CAMPBELL.

(Circuit Court of Appeals, Fifth Circuit. January 22, 1901.)

No. 953.

MARITIME LIENS—DEMURRAGE—SUFFICIENCY OF LIBEL.

A libel which alleges that libelant hired a lighter to persons engaged in furnishing a cargo of lumber to be loaded on a vessel, and that the lighter was detained by the master of the vessel, not on account of the hirers, but for the benefit of the vessel, for 14 days after the expiration of the time allowed by the custom of the port for unloading it, but which contains no averment as to whose duty it was to unload it, and avers no contract with the vessel or her master, is insufficient to state a cause of action in rem against the vessel for the demurrage.[1]

Appeal from the District Court of the United States for the Northern District of Florida.

The following libel was filed in the court below:

"The amended libel of Bryan Dunwody, of the city of Pensacola, state of Florida, filed by leave of the court first had and obtained, against the Norwegian bark Campbell, whereof —— Lea is now, or late was, master, her tackle, apparel, and furniture, and also against all persons intervening for their interest therein, in a cause of contract, civil and maritime, alleges as follows: (1) That libelant is engaged in the business of furnishing, by hiring, lighters

---

[1] Maritime liens, see notes to The George Dumois, 15 C. C. A. 679; The Nebraska, 17 C. C. A. 102; The Electron, 21 C. C. A. 21.

for the carrying of lumber to vessels lying at anchor, and loading such cargo, in the Bay of Pensacola, and for holding such cargo alongside of vessels so anchored until it can be taken from said lighters and stored in such vessels; that such lighters are held in position alongside of such vessels for the purposes aforesaid by means of the vessel's tackles, and, when so secured, serve the vessel by facilitating their taking on such cargo in the same way that wharves and docks facilitate the loading of such cargo on vessels moored to them; and that such business of lightering is an established business at Pensacola, in which libelant and other owners of lighters have for years, by the hiring of such lighters to the public, facilitated the loading of lumber cargoes on vessels lying at anchor or moored at docks in the said Bay of Pensacola. (2) That on the 20th day of July, A. D. 1899, the said bark Campbell was moored at anchor in the Bay of Pensacola, taking on a cargo of lumber and timber; that on the morning of that day libelant's lighter, named the 'Holmes,' loaded with seventy-five thousand (75,000) feet of lumber, to constitute a part of the cargo of said bark, was then and there attached to the said bark by means of her tackle; that said lighter Holmes was hired from libelant by persons who were furnishing the said cargo to the said bark, to carry the lumber to said bark; that by the custom of the business the master of the said bark and the hirer of the said lighter have the right to hold the said lighter with cargo on her for said vessel one day for every * * * thousand feet of lumber, and that, said lighter Holmes having on her 75,000 feet of lumber, the said master and the said hirers had the right to hold her without payment of any additional hire until the 27th day of July, A. D. 1899; that after the said 27th day of July, the said master having failed to cause the said lumber on board the said lighter to be discharged from her, did himself, as master, and for the benefit of the said bark, continue to keep the said lighter alongside the said bark by means of her tackle and to use her, the said lighter, to hold lumber for said cargo, for fourteen (14) days, and finally, on the 14th day, finished the unloading of the said cargo of the said lighter upon and into the said bark, where the same was stowed and became the cargo of the said bark, to be carried from, and which was thereafter in fact carried from, the port of Pensacola aforesaid; and that the said detention and use of said lighter was not by or on account of the said hirers, but solely by the said master, who, for the benefit of his vessel, and in his character as master, held and used the said lighter as aforesaid during the whole of the said fourteen days. (3) That the reasonable and customary charge for the use of such lighter as the Holmes in the manner and under the circumstances aforesaid is ten ($10) dollars per day, amounting in this case to the aggregate sum of one hundred and forty ($140) dollars, which sum libelant has demanded, but which the master of the said bark refuses to pay, and the master and owners of the said bark have never paid to libelant the said sum of money, or any part thereof. (4) That the said Norwegian bark Campbell was at the institution of this suit in the Northern district of Florida, where process herein has been served upon her. (5) That all and singular the premises are true, and within the admiralty and maritime jurisdiction of the United States and of this honorable court. Wherefore this libelant prays that process in due form of law, according to the course of this honorable court in cases of admiralty and maritime jurisdiction, may issue against the said bark Campbell, her tackle, apparel, and furniture, and that all persons claiming any right, title, or interest therein may be cited to appear and answer on oath, all and singular, the matters aforesaid, and that the said bark may be condemned and sold to pay the demand and claim aforesaid, and that libelant may have such other and further relief as in law and justice he may be entitled to demand."

The claimant of the bark Campbell filed exceptions thereto as follows:

"(1) Because the allegations thereof do not disclose any maritime lien upon the said vessel whereon a libel in rem can be founded. (2) Because the allegations thereof do not constitute an action in rem against the bark Campbell. (3) Because the allegations thereof do not constitute an action against the vessel. (4) Because it is herein shown that the duty of delivering the cargo to the said bark did not devolve upon the owners or master of said bark, but upon the persons furnishing the cargo, and it is not alleged that the parties

furnishing the cargo were authorized by the master or owners of the said bark to furnish the cargo at the time it is alleged the said lighter Holmes was made fast to the said bark. (5) Because the facts which set up any claim for detention of the lighter of libelant should be against the hirer of the said lighter or cargo thereon, and not against the said bark. (6) Because it is not shown in said libel that there was any contractual relation between the libelant and the owners or officers of the bark Campbell. (7) Because it is not alleged that the alleged custom as to the right to hold lighters in the port of Pensacola is reasonable. (8) Because by the allegations thereof it appears that the said so-called custom is unreasonable. (9) Because it is sought by the libel herein to create a contract by custom or usage. (10) Because it is not alleged in the said libel that the custom set up was certain and uniform. (11) Because it is not set forth in the said libel that the so-called custom or usage was general in the port of Pensacola. (12) Because it is not alleged in the said libel that the owners of the said bark, or the officers thereof, had any knowledge of the alleged custom of the port of Pensacola."

The exceptions were sustained, the libel dismissed, and the libelant appealed.

John C. Avery, for appellant.

B. C. Tunison and S. M. Loftin, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). The first three exceptions to the libel are well taken. The libel alleges that the lighter was hired from the libelant, by persons who were furnishing cargo to the said bark, to carry the lumber to the said bark. From this it is apparent that the contract was not with the owners of the ship, nor with the master for the use of the ship. What the relations were between the persons who were furnishing cargo to the said bark and the ship is not averred. When and where the duty of the furnishers of cargo ended, and the obligation of the ship commenced, does not appear. Whose duty it was to unload the lighter and stow the cargo is not averred. It is a matter of common knowledge, and the records of this court abundantly show, so that we are authorized to take cognizance thereof, that nearly all, if not all, ships that load timber in the port of Pensacola are under charter containing provisions generally to the effect that the charterers are to furnish the cargo, select the stevedore, and pay, in the first instance, at least, all the expenses of loading and stowing, but always regulating the respective duties and obligations of the charterers and the ship. All these important facts are omitted in the libel, notwithstanding the rule that the libel should contain every fact necessary to give the court jurisdiction and entitle the libelant to the relief he asks (see Ben. Adm. 235, and cases cited); and we can give no effect to the general statement that "the said detention and use of said lighter was not by or on account of the said hirers, but solely by the said master, who, for the benefit of his vessel, and in his character as master, held and used the said lighter as aforesaid during the whole of the said fourteen days." Besides this, we are clear that enough is averred in the libel to show that the ship is not liable under express contract, and that this general allegation, if given effect, is wholly insufficient to make the ship liable ex delicto, or under any contract that can fairly be implied. The decree of the district court is affirmed.